case number 20-5079. Selvin Leonard Solis Meza, appellant, versus Tracy Renaud, senior official performing the duties of the Director, United States Citizenship and Immigration Services. Mr. Forney, for the appellant, Ms. Lori Kurtz, for the appellate. Good morning, Mr. Forney. Good morning, Your Honor. Thank you, and may it please the Court, Jeffrey Forney, for appellant, Selvin Solis Meza. The District Court below erred in dismissing Mr. Meza's complaint for lack of jurisdiction. Neither the Immigration and Nationality Act as amended nor the Administrative Procedure Act preclude judicial review of Mr. Meza's legal challenge to USCIS's error in rejecting his adjustment of status application to pursue permanent residence status. The issue is whether USCIS correctly applied the regulation governing adjustment status applications, which involves a pure question of law over which the District Court had jurisdiction. The application of law to facts presents a question of law for the Court to decide, and the District Court improperly dismissed Mr. Meza's claims for lack of jurisdiction. Now, the District Court's decision turned primarily on a mistake of presupposing that removal proceedings provided Mr. Meza with further relief. That's incorrect. The presupposition is primarily incorrect because USCIS's action in dismissing Mr. Meza's complaint for the agency's lack of jurisdiction was a final agency action. It's a final agency action for which there's no further relief either through an administrative appeal at USCIS, nor is there any other form of relief that Mr. Meza could pursue in Immigration Court. Therefore, the agency's action is a consummation of the agency's decision-making process from which legal consequences flow. As the Court can see from the agency's decision on the face of it, USCIS's decision is a consummation of its decision-making process. It came to a conclusion and it rejected Mr. Meza's application. There are certainly legal consequences that flow from this. It determines Mr. Meza's rights, at least with respect to his pursuit of permanent resident status based on his U.S. citizen spouse's petition for him as an immediate relative. Because USCIS dismissed his application, there's legal consequences that flow. Namely, he's not able to pursue permanent resident status under the statute and nor is he able to obtain work authorization and he cannot remain here, at least lawfully, with his U.S. citizen spouse and children. So much of the debate here seems to turn on whether he's an arriving alien or someone who is admitted without authority. And you focus on the notice to appear and the box that is checked at the top of that, this is arriving alien. Correct. But once an immigration judge has issued a removal order, isn't it the immigration judge's decision that we should look to, doesn't that sort of overtake whatever the paperwork was before? And we look at the immigration judge's decision to determine whether the removal order was based on his status as an arriving alien or as someone who had entered without authority. Ordinarily, that would be the case, but there's an in absentia removal order here. And I mean, I think the government does correctly point out, it does not necessarily get into the details. There still is a removal order. And it seems to me that is now, whatever the paperwork said before, that is now the relevant basis for determining his status. Right. That could be to the extent that the removal order states that it's based on the charging document, the notice to appear. I mean, that's what legally initiates the removal. But again, we're talking about what the immigration judge did and what the immigration judge may have incorporated something, but it's still a focus should be the immigration judge's decision. If the immigration judge issued detailed findings, that may be the case. He did not just simply adopted the government's case that says, based on the length or detail of immigration judge's decision, whether that is the operative focus of an inquiry to determine the basis on which he was ordered removed. Well, there's a Ninth Circuit case, and we cited in our brief, and I'm sorry, I can't remember off the top of my head, it's in our opening brief. The Ninth Circuit accepts a notice to appear as functionally equivalent to a complaint in a civil proceeding such that the statements in that notice to appear are construed against the government because they're admissions. And the only thing I can say on Your Honor's point is that the notice to appear is legally operative in that it initiates removal proceedings and informs the basis of those proceedings because based on how the government charges the foreign national, determines how the proceedings go Okay, but is there any way that we could determine his status without also looking at the immigration judge's removal decision? We'd have to look at them both. Would you agree with that? I think you'd have to look at them both because again, the immigration judge's decision does not have detailed findings. Right, but if in another case where say it's more was ordered removed based not on their status as an arriving alien but instead as someone who was had entered without authority, then that would control over the complaint as you called it, correct? If it were explicit, I know it's... Yeah, it's not explicit in this case, but given Your Honor's hypothetical, I believe in that type of situation, of course it would depend on facts and face value that there's detailed factual findings that the immigration judge made that would likely be determinative, but it can't be in this case because that's not what... Given that you've agreed that even in this case, we have to also interpret and analyze the removal decision and either if we thought it read, if we thought that the immigration judge had ordered him removed based as not as an arriving alien but as someone who had entered without authority, then we would have to disagree with that determination for you to have jurisdiction, for you to establish jurisdiction in the USCIS, wouldn't we? If we read, I'm not saying how we read at all. Right, right. I'm just trying to sort out the decisional tree here. I understand. I guess it's difficult to answer your question directly without acknowledging several perhaps suppressed premises in your question. And so let me just say that your question... Before we go through the premises, I actually would like you to just... I realize what premises I put in there. All I'm saying is if we do... Yeah, well, Your Honor would... That he was not determined as an arriving alien and then to either on your claim for jurisdiction before the USCIS and obviously for the ultimate merit, we would have to disagree with the immigration judge's removal order. Well, certainly if the court in these proceedings would have to do something with the immigration judge's order, it would have been, would have had to have gone up through the channeling provisions on a petition for review. But that can't be the case here because again, we're not challenging the removal order and it doesn't go into detail factual findings. Well, let me ask you about... Let me try to get a Judge Millett's question a different way. Your statement that quote, you're not challenging the removal order leads me to ask you to focus specifically on the government's 1252A5 argument. They say, you both agree, you agree with the government that that requires indirect challenges also. And you say, you say this is not an indirect challenge because as you just said, you're only challenging the USCIS's argument rejecting the adjustment application, right? That's your argument. Yes. But the government responds, the government responds that this is still an indirect challenge on the removal order because if you're successful in challenging that, the USCIS argument, if you succeed in that, it will result in validating the removal order. So the government says it is an indirect challenge and I didn't see a response to that argument in your reply brief. Well, I apologize if there wasn't, but the obvious response and I put that in my reply brief, but the obvious response is that the regulations provide for this form of relief to be channeled through CIS. So if the government's argument is taken at face value, it simply negates the possibility of that happening because it takes, it gives with the right hand the regulation. That may, that may be right, but I'm asking you the question about why its absence in your reply brief leads to the, leads at least me to ask whether or not you haven't forfeited this argument. No, the argument that, okay, what I just stated your honor here is in our reply brief is that it can't be an indirect challenge to remove. No, you, what you, but no, I, well, could you, I just didn't see in the reply brief where you said, no, the government is wrong. Yes, it's true. We're challenging this CIS decision, but it's nonetheless not an indirect challenge. And I didn't see where you gave us that argument. You do say that you're, you're challenging the USCIS decision on, on whether or not your client is an arriving alien, but you never say the government said, well, that's an indirect challenge. And I didn't see a response to that. That's my only question. Okay. Well, I'm looking at our reply brief and I believe it's addressed on, I believe it's addressed on pages four and five. What, what specifically on four and five? Okay. I think it's, is it when you're starting to Martinez versus Napolitano, which was their indirect challenge case that they relied on? Yeah. I mean, I distinguish those cases. I'm sorry. Maybe I could have been more direct, but in distinguishing those cases, those decisions involved people who were going directly after removal were saying it was defective in some manner, either procedurally or because it didn't have a legal basis, but they didn't have a situation where the government's own regulation says, if, okay. And I know we have this disagreement about whether he's an arriving alien, if he's an arriving male and use the regulations, you go to CIS, you cannot go to the immigration court. You have to go to CIS. And if the government is telling you, you have to go to CIS, it can't then later say, if you're going to CIS, you're seeking a form of relief is available to whether you're in removal proceedings or not. And if you are removed scenes and you're arriving alien, you have to go to CIS. It can't then at the same time say, well, if you're challenging CIS is decision that you were required to go and seek, that is an indirect challenge to a removal order. If that's the government position, then in all cases, they would foreclose judicial review of that channeling mechanism that they forced everyone to go through to CIS, to seek adjustment status. It makes no sense. It's a self-defeating proposition. So I'm sorry, maybe I could have been more clear about that, but I think that position does come through in our library. The government's position is self-contradicting. That just can't be the case because otherwise that would never be judicial review of a decision by CIS of an arriving alien removal proceedings. But the CIS can't, and I believe KUKANA stands for this proposition generally, is the regulation can't be the mechanism by which the court is stripped of jurisdiction. It has to be statutory basis. So, I mean, that's the reason why the government's position just can't stand. I mean, I would say that our position ultimately I just want to ask a bottom line question. If you were granted adjustment of status, what happens to the removal order? Well, because adjustment of status is a form of relief that, again, is permitted by the regulation that you have to go through CIS, then his status is adjusted, he becomes a permanent resident. So the removal order by virtue of the grant of adjustment of status is vitiated? Well, he then has a relief from removal. But does the order of removal still stand? And if they try to take him out, he has this as a defense or does it actually sort of negate the removal? Well, he's the lawful permanent resident at that point. So he wouldn't have a basis to remove him. Does he need to do something to have to remove? Does he have to seek cancellation of removal? Is he at risk of being removable? And the adjustment of status is an affirmative defense? Or does as a matter of law, does the grant of adjustment of status nullify the removal order so they couldn't even try to remove him if they wanted to? Say someone, you know, something doesn't right hand doesn't talk to the left hand in the computer, he's gone abroad for a trip and tries to reenter the country or something like that. It shows order of removal. Well, CIS would grant adjustment of status. I mean, just, you know, they issue a permanent resident card. So he would travel on that and come back, I suppose, you know, if the Customs and Border Protection Center, where you have a removal order here, it wouldn't be legally operative because, again, adjustment of status is a form of relief for removal that he is, under the regulation, authorized to pursue through CIS and CIS can grant that and grant that relief from removal. Can I take you back to the removal order? You said that the grounds of decision aren't clear. There are no findings and such. But the immigration judge specifically credited the factual allegations of the government in the notice to appear. And if you look at the notice to appear in its entirety, the arriving alien box is checked. That's true. But the substance of the the government's view that Mr. Meza came in the country without being admitted or paroled, does that in the numbered allegations and then in the formal charge that follows? Right. Correct. I will note that the box is checked by the immigration judge. It does say that the documentary evidence establishes the truth of the factual allegations. The second sentence says, I find removability established as charged. So it's it's also a reference to how he was charged. And again, that's legally significant because it's a charge initiates removed, received structures, the proceedings determines what forms of relief are available. And and on the face of the notice to appear, the charging clause appears to be not box number one that's checked at the top of the. But the paragraph after the specific allegations, which say which says on the basis of the foregoing, it is charged that you are subject to removal because you're present in the country without being admitted or paroled. That's true, although in the Board of Immigration Appeals decisions, which we said in our brief, the term of our charge also means what box is checked at the top. It's how they're charging for an action. So I do admit you have to because the it is a form document that the immigration judge checked. There are no detailed factual findings. We're left with a checked box. So suppose suppose we agree with you that all of that makes the. Administrative record with regard to removal ambiguous. Then it's still the case that the second administrative order, the one directly under review, which is the denial of status by USCIS. The jurisdictional question before USCIS turns on answering that hypothetically ambiguous question and the USCIS officer concluded that what was decided in the removal proceeding was that Meza was not admitted, not paroled, not an arriving alien. Well, that's I don't think what CIS officer did. He went beyond the charging document and the. That's the basis of his finding that he lacked jurisdiction. He went beyond the charging document in the immigration judge's decision. I went into other documents specifically documenting the arrest and the detention at issue. But what he was doing was trying to figure out what facts were found in a removal proceeding, which seems to just take you right into at least B-9, if not A-5, 1252 B-9. Okay. I didn't expect that conclusion from I didn't know we were going into the jurisdiction stripping component again. That I have to disagree with completely because again, it's USCIS's decision that's subject to review. Now, the court may agree or disagree with the decision that CIS made, but there certainly is jurisdiction review because again, the regulations channel everything through CIS and whether CIS correctly applied the regulation to the charging document is a question of law. And that doesn't have to do with any attack on a removal order. It's simply Mr. Meza saying, well, you told me it's charges arriving alien. You told me I have to go through CIS to seek adjustment status. I'm doing that. I'm going to you, but whether CIS did that correctly or not is a question of law and has nothing to do with his removal order being attacked. It's he's saying, I have a form of relief available to me that you've made available to me through the regulation. And that's what I pursued. And it's just simply a question of laws to whether CIS applied the regulation correctly. Okay. Thank you. Thank you. All right. And that's a judgment. Are you okay? Do you have any other questions? I'm not right now. Okay. You're, we'll give you a minute or two, Mr. Point, but I think we'll hear from the government now. May it please the court. Mary Laird was on behalf of the United States. This court should affirm the dismissal of the district court for three primary reasons. First, because section 1252 bars plaintiff's claim. Second, because plaintiff has not exhausted his administrative remedies available to him in immigration court. And third, that plaintiff's APA claim fails on the merits because USCIS properly determined that she is not an arriving alien. So I'd like to turn first to my third point, actually. Are those, those are all independent reasons. We, you know, you're not suggesting we need to decide them all. No, your honor, you should, you should not have to decide that. You should only have to decide the jurisdictional question. So why don't you start with that? Sure, your honor. So there are two ways that the court could address this jurisdictional issue. The way the government proposes that the court addresses jurisdictional issue is by first looking at what plaintiff is really asking for here. And then what USCIS did to determine that plaintiff first should have gone to immigration court as Congress clearly intended, seen if he, if his claim is right, that he could, that he cannot adjust status in immigration court. And then and only then come back to the district court claiming that he has exhausted his administrative remedies and gone through the administrative process channel, channeling provisions. He says, he says he's an arriving alien. Doesn't have to do that. Yes. Yes, your honor. He does. However, USCIS has made a finding that he is not an arriving alien and Congress clearly intended that when there is a challenge that can be brought in immigration court, that that challenge should be brought there first. Now, what is undisputed here is that plaintiff can move to reopen his immigration proceedings and attempt to adjust status in front of an immigration court. No, your honor. No, your honor. It is not under the code provision that plaintiff cited. It is too late. However, there are other code provisions that allow for motions to reopen out of time. And one of which is the CFR provision stated in our circumstances. So plaintiff can move to reopen his regulations. Can you tell me that regulation again? Yes, your honor. That's eight CFR one thousand three point two three. B one. And that a lot that essentially he doesn't need those. He doesn't meet those criteria. That those criteria, he's got those criteria. He does meet that provides for a motion to reopen. It's a little it's a little bit of a misnomer, your honor. Can you guys amend this regulation just last December, just a few months ago to sharply limit the espontaneous openings? It's now prominent by. No, your honor. I think the regular the regulation that allows to respond to reopening still provides the opportunity there for us to respond to reopening. Now, whether hang on, hang on. I want to be crystal clear on this. So the government's position is that the amendment last December, which is now Roman at five of that exact same regulation, doesn't doesn't bar we respond to reopening in his case. No, your honor. I do not believe so. However, I know you don't. I'm going to be your honor. Personally, I am not I am not I would have to look at the text of that regulation. And, and I have not looked at the text of that. Rest of this regulation that you're saying rely on for him to reopen? Your honor, I was unaware that it had been amended such that it would it says that there would be an argument that he's precluded from even moving for real reopening. Probably make it easier. Go ahead, please. Sorry. Oh, your honor, I'm more than happy to fully brief that for your honor. But unless that part of the regulation says that he cannot apply, that he cannot even seek a motion to reopen, then the government's argument stands. Well, it says we respond to reopening cannot be granted unless the sweetest less the ground for removal. Do you think that would in this case? I'm sorry, your honor, I didn't hear the last part would be the basis on which he seeks reopening has to be something so powerful, maybe it does apply here, that it would vitiate the basis for removal completely. Oh, yes, your honor, absolutely here, because here, he would be applying for apply his final order of removal, and he would no longer be able to be removed. Got it. Okay, so vitiates all grounds. This is the text of the regulation vitiates all grounds of removability applicable to the alien. Yes, your honor, if you were if you were granted adjustment of status, then he would no longer be removable from the United States. So that would be a reason that would vitiate all grounds of removability from the United States. And even and even easier, as I'm, as I'm sure you know, it hasn't been amended is Roman at four right before that one, says a jointly filed motions to reopen aren't subject to any time limits. So given your argument, your position that the government would join with him in a motion to reopen, so that this would have been all right, we've got time limits. Your honor, I can't speak for the prosecutorial discretion of of ice that falls under their prosecutorial discretion. However, the point of the A five would be nine argument here is that that avenue hasn't even been attempted. And that's what Congress was getting out with a five and B nine, and even the APA purpose behind the exhaustion of remedies is that if there is an avenue available to bring a certain legal challenge, and that avenue is immigration court, that you know, bring that I understand that argument, I do get it. And it's very soundly presented in your brief, but was just difficult for me was that I didn't see any answer from the government to his argument that I can't do it. And there's no, as you said, you haven't addressed, or you're not aware of the amendment in December 2020. It sounds like maybe you could get back to us and let us know if you think that would apply to his case. Yes, you're absolutely can we can, and I can breathe that and I apologize that that I'm not sure how he gets he deals with the ones. Yes, Your Honor, I think I think you're correct on that point. But the response to the government, the plaintiff's argument that he could not, was not based on the fact that there was a new amendment, it was based on the fact that he said he couldn't file it out of time. And the government responded by citing the regulation that you just read, Your Honor, which is that the suicide reopenings do allow for him to file them past that ordinary 30 day motion to reopen period. So, the government proposes that the court, look at where plaintiff could have gone to bring this challenge first, where the purpose of this action is to shift jurisdiction from the tribunal that entered his removal order. In order to render his removal order ineffective. Section A five and B clearly apply. And the government is not proposing that plaintiffs just bounce between USCIS and immigration court constantly and never have this issue decided. The government is merely positing that plaintiffs should have gone to immigration court first. And immigration court had said the opposite of USCIS that well, he is an arriving alien USCIS has jurisdiction, then we might have a case here to decide whether A five and B nine apply. But here our plaintiff hasn't even gone to immigration court to have that legal issue decided. He hasn't even attempted it. And USCIS is already found. Please, I'm sorry. The time has not yet. Absolutely, Your Honor. Did you want to finish your sentence? I apologize. No, Your Honor. I'd like to hear what your question is. You had mentioned jurisdiction out of the box 1252. And as you know, the Supreme Court has a cert petition pending before it right now, that address the 1251 12, sorry, 1252. A, B, a circuit conflict. Is there? Is it the government's position? Or does it have a view on whether we should hold this case to see what the Supreme Court says about jurisdiction? No, Your Honor. The government believes that the court should follow the majority of circuit courts. And here plaintiff, plaintiff and I, the government agree that jurisdiction is not stripped in this case, because USCIS I understand your merits argument there. But there is a circuit conflict. And so there is your efficiency is I didn't know that the government usually asked courts to weigh in when the cert petition was pending on a circuit conflict rather than wait and let the Supreme Court resolve it. Well, Your Honor, here, the majority of the circuit courts have found, as we stated in our supplemental briefing that jurisdiction isn't under a to be I here. And in addition to that, we there are other grounds for dismissal. And because there are other grounds for dismissal here, we believe it would be judicially appropriate to take those grounds up and decide those grounds. And then the court doesn't have to reach the a to b I issue itself. If we agree with you on B nine, or a five, those are alternative jurisdictional grounds for dismissal. Clearly, we don't need to reach the a to b ground. But we don't really have the luxury of ruling on final agency action or the merits skipping over a to b to get to final agency action or the merits, right? Because then we have a we have to decide jurisdictional grounds before merits ones, right? Yes, Your Honor. So the, the alternative way that this court could decide this issue, first of all, the government stated that he had another avenue to go to, he didn't go a five and b nine apply. The alternative way to do it is the way that the Second Circuit did in Singh, where the almost exactly the same issue was presented. So in saying what you cited in the brief, the alien went to USCIS to try to adjust status, USCIS said we don't have jurisdiction because you have a final order of removal. The alien said, well, yes, you do have jurisdiction. And what the Second Circuit did is the Second Circuit actually went to his claim that USCIS did have jurisdiction, found that USCIS did not have jurisdiction, and then determined that a five and b nine applied. So the court did look at the underlying merits of the claim in order to determine whether a five and b nine applied. So first, first and foremost, the government would say that the court should just look at what plaintiff is claiming, look at the fact that he's trying to invalidate his removal order, look at the fact that USCIS already found that he wasn't an arriving alien. And the fact that he could bring it in immigration court and at least have that issue tried first there means that a five and b nine apply. But alternatively, the court could do it the way the Second Circuit did, which was to look at that claim, that that plaintiff made whether USCIS had jurisdiction, find that USCIS did indeed, did not have jurisdiction, and then find well, clearly, you have to go to immigration court a five and b nine apply, you have to go there first, and you didn't, and therefore, jurisdiction is barred. So the court could do it one or two ways. So when we turn to the the approach that Singh took, we do have to look at plaintiff's claim that he is an arriving alien. And what plaintiff misses here in his brief, and in his oral argument, is that the highly deferential standard review from State Farm clearly applies. We're looking at whether USCIS applied the right standard, which plaintiff says that they did, and then look to whether USCIS considered the facts and made a reasonable conclusion. And here USCIS clearly did, for the reasons that multiple judges just stated. First, USCIS looked at the notice to appear. They noted that at the top of the notice to appear, there is a box that is checked. However, USCIS went on later in that charging document and saw that he's actually not charged as an arriving alien. Under the allegations part, he's charged as someone who has not been admitted or paroled, which specifically negates any opportunity that any opportunity that he is an arriving alien. And then it looked at the facts in the I-213, where the border patrol agent saw plaintiff coming across the Rio Grande River, and he was not paroled in at that time. And then finally, they looked at the immigration judge's order, where the immigration judge did not adopt the top of the document where it said you are an arriving alien, but adopted the charges and allegations as charged. And the charges and the allegations in the document are not at the top of that NTA. They're under the charges and allegations section. So at best, we have a situation where the NTA and the order of the immigration judge is inconsistent, and USCIS is the one that makes those findings there. I see, Your Honors, that I'm out of time. I had another question, but I wasn't sure if Judge Katsas was done. Go ahead. Okay. So first of all, is there case law that talks about what to do if the notice of a peer is internally inconsistent on the top? Because there are cases that are attached significance to that check box, legal significance, where that has been the government's position. And so the first question is, and I didn't see your brief addressing that contradiction within the notice to a peer. And two, once we have an immigration judge decision, does that sort of render that, does that overtake whatever was in the notice to a peer? So I think here, the NTA does have, you know, it does have legal significance, and certainly it does in immigration and removal. The NTA, the box at the top of the NTA, that's what I'm talking about. So the entire NTA itself has legal significance. Of course it does. I get the box though. That's what he relies on. I didn't see you address the box. So there is no, I guess there's no clear-cut line here with regard to what USCIS can and it's making a completely different determination. Not whether the alien is properly charged, as a petition for review might consider, or as an immigration judge might consider. USCIS is not within the realm of the BIA cases that plaintiffs cited, where just because a box is, just because a box is checked, that that would automatically mean someone is an arriving alien. USCIS is making a completely different agency determination here. You want to take the position that you're making a completely different agency determination here? I thought your whole point was that this is interwoven with... I'm not exactly helping you on that. Yeah, no. I mean, if you want us to say it's completely different and divorced from the removal proceeding, we could do that. But I thought that was not the theme of your position. I'm sorry. I was clearly trying to distinguish the BIA cases that attach. I'm not sure that's a good... I mean, if that's your distinction is that when you're in a removal proceeding, the box check matters and has legal import in its own right, just the box check part of the MTA. But this thing is so far divorced from that proceeding that the checkbox doesn't matter. That's what I understood you to be arguing. Is that your position? Oh, so the checkbox does matter. However, at best, USCIS here has a conflicting document. It has a document that at the top says you are an arriving alien. And if that is all the document said, then I think plaintiff would have a much better argument here. However, USCIS right underneath that has a charge that completely negates the above statement that he is an arriving alien. It says that he has not been admitted, paroled into the United States. Plaintiff claims that he's an arriving alien because he was paroled into the United States. And yet you have a charge on the MTA and the specific charging document that says you have not been admitted or paroled into the United States. Then as your honors pointed out, we have a immigration order from immigration judge that has made the factual findings. But there's an argument about his parole, right? I understand that argument, but he says he was given humanitarian parole and he has a document from a border agent that says he was given parole for humanitarian reasons. And again, I saw nothing in your brief about that. So he's got a box check and a government document saying he was given parole for humanitarian reasons. And your brief just didn't address either of those things. And so I'm not sure what to, and I didn't see the decision here addressing that. And the jurisdiction and merits are so interwoven here. This is all very confusing not to have any arguments on that in your brief. So your honor, I do not believe he has a parole document that says he has been paroled into the United States. J29 is the record of deportable inadmissible alien. And that says the last operative line on Jade 29 says subject were issued a list of legal services and documentation pertaining to an NTA, which they were issued due to humanitarian reasons. And they were paroled, sorry. And they were paroled earlier, right? He wasn't kept. Oh, your honor, that's, that's very different from a, from a parole document. If he was issued humanitarian parole, he was given either conditional parole or humanitarian parole. Do you have, right? And so how do, since it says humanitarian there, how do we know, there's, is there a special document you get when you have humanitarian parole? Your honor, on the IQ 13 record, it would say that the individual was granted humanitarian, was granted humanitarian parole. There would be an entire, there would be an entire section. I believe he would also get a document, but I think we're getting a little bit further away from what. I'm just confused because there's documents here that are contradictory already. So it's a little hard to rely on the paperwork here. Let me ask you a separate question. Absolutely. To the point that USCIS had to, had to look at. And that is precisely what USCIS did look at, looked at these conflicting documents, which the government does not dispute. You have an NCA that's clearly conflicting. Looked at the immigration judge and made a determination and applied reasonable, applied the facts, considered all the facts and made a reasonable conclusion. And absent, and absent of finding by this court or a claim by plaintiff, even that no reasonable fact finder could have failed to find how, how USCIS found, then the court must uphold USCIS's decision under the extremely deferential arbitrary capricious. That's on the merits. So just back on some of more of the threshold questions though, again, the centerpiece of your brief is that he should file a motion to reopen. Yes, your honor. But then your argument to us was not that he should file because his motion would be untimely unless this new regulation covers him. So put aside that and we'll hear from you on that. Other than that, his motion and the argument to us was all about sui sponte reopening. And I'm trying to figure out how someone gets an immigration judge to sui a sponte reopen, but you have to file an untimely legally prohibited motion to reopen and hope that it inspires the immigration judge to sui a sponte reopen. I don't know. It's a little bit of sponte reopening. Yes, your honor. It's a little bit of a misnomer in the way it works. But you can first reach out to ICE counsel to see if they would join in a motion to reopen. And what that CFR provision allows for is a sui sponte reopening by the immigration judge. And essentially what you do is you file that motion to reopen and say, judge, you have the authority under this section to sui a sponte reopen and I want you to use that authority for these reasons. And the reasons why plaintiff would say, plaintiff would say is like, I'm eligible for adjustment of status. USCIS has found that I'm not an arriving alien. It's found that you have jurisdiction. Please reopen my proceedings, use that authority, reopen my proceedings so I can adjust that. And that's essentially. Okay. I mean, the only difficulty I have is that the federal register notice that accompanies this December 2020 regulation says that's what we're trying to stop. So I'm confused about your argument here today, but hopefully you can clarify. Yes, you're right. And I think the provision that your honor stated at the end there would encompass because it would remove the reasons why he could be removed. I'm happy for the opportunity to bring that up. That would clarify a lot of things. Thank you. Thank you. Thank you. Thank you. Judge Cassius, you have anything else? I'm all set. Okay, great. Thank you. Yeah, thank you. Mr. Forney, you are out of time, but you can have two minutes. Thank you. Just two brief points. One is that the Board of Immigration Appeals decision that we cited in our brief matter of MDCB 28 INA decision 18 at page 30 discusses in that case, there was an issue of whether the alien was properly charged. And the way in which the Board of Immigration Appeals uses that term of art is that whether or not the person was charged as an arriving alien. So the government's position that charge in no way means what is checked at the top of the notice to appear is not consistent with how that term is used in immigration, in the history of immigration proceedings, and even recently by the Board of Immigration Appeals. So that argument isn't going to work. Of course, the government wants to present this case as a balancing of facts, because they know that they get a deferential review on that. But we're not asking the court to reweigh facts, nor is this case, in our view, about the weighing of facts. It's just simply whether USCIS properly discounted the legal significance of the charge that the legacy INS made that he was an arriving alien. And I think we've put forward the reasons why that's legally significant. So I won't go into that in any more detail. Your argument, as I understand it, is right line the other way, which is once they check that box at the top of the form, they are, as a matter of law, precluded from contesting that issue in this case. We are legally bound to take the checked box for what it says, regardless of anything else in that form or in that administrative record. That makes sense, yes. Even if we think that the box has some significance and can't be ignored, what support do you have for the proposition that it's everything else in that document and in the removal record? By regulation, the government has control over the charges. By regulation, the government may amend the charges during the removal proceedings at any time. The government actually can elect not to check a charging box, and that has legal significance. Herrera-Vasquez 27 INN decision 825, that's the decision from the BIA of last year. But if it does so elect to charge a foreign national at the top of the charging document, that structures the nature of the proceedings and determines the forms of relief that are available. It has legal significance. So if the court's going to allow the agency then to second-guess those prosecutorial choices over which it had complete control and could amend them at any time, it's allowing them to speak out of both sides of the mouth. That's exactly what they're doing and have been doing. The government cites Chen V. Rodriguez in support of its position, but it actually supports Mr. Mez's position because we see exactly how CIS is acting inconsistently. In that case, they kicked someone out of applying for adjustment of status because they weren't charged as an arriving alien, and they're doing the exact opposite here. So the position is inconsistent from start to finish, and they've ignored the legal significance of the charge on the NTA, and the government is bound by that charge. All right. Mr. Forney, thank you. Thank you both. Were you done, Judge Cassis? Yes, I am. Thanks. Okay. Judge Millett, anything else? Good. Thank you. Okay. Mr. Forney, Ms. Sledeker, thank you both very much. The case is submitted.
judges: Tatel, Millett, Katsas